The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts as those reached by the Deputy Commissioner, with some modification but modifies the conclusions and holding of the Deputy Commissioner. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 6 October 1992 an employment relationship existed between plaintiff-employee and defendant-employer.
3. The plaintiff's average weekly wage was $768.81, yielding a compensation rate of $426.00 per week.
4. The defendant-employer is self-insured with Key Risk Management Service as the servicing agent.
5. On 6 October 1992 plaintiff suffered a compensable injury arising out of and in the course of his employment with defendant-employer. The parties entered into a Form 21 Agreement with respect to this compensable injury. The parties also entered into a Form 26 Agreement 2 August 1993. Plaintiff is presently receiving temporary total disability compensation.
6. Plaintiff's medical and rehabilitation records regarding his compensable injury are admitted into evidence as Stipulated Exhibit #2 and include the following providers:
1) Piedmont Orthopaedic Associates,
2) The Pain Management Center;
3) Duke University Medical Center/Dr. Thomas Parker;
4) CVTS Diagnostic Vascular Laboratory;
5) Cardiovascular Thoracic Surgeons/Dr. James Lawson;
6) Dr. Jeffrey A. Todd;
7) Dr. Scott A. Bertrand;
8) Greensboro Orthopaedic Center/Dr. R. Andrew Collins;
9) Wesley Long Community Hospital;
10) Olsten Health Care;
11) Drs. McLaulin Fernandez;
12) Rehability;
13) Caremark; and
 14) Resource Opportunities, Inc./Ms. Ann Monahan and Ms. Connie Thorpe.
7. After the filing of this appeal, the parties were able to resolve two of the issues and therefore plaintiff withdrew his appeal of the change of physician issue and the permanent total disability issue. The only remaining issue before the Full Commission is whether plaintiff's attorney is entitled to an award of attorney's fee.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. On 6 October 1992 plaintiff was a 63-year old male employed by defendant-employer as an airline mechanic. Plaintiff's duties included inspecting and repairing aircraft parts, climbing ladders, carrying parts up to 100 pounds and working in small spaces.
2. On 6 October 1992 plaintiff suffered a compensable injury to his right knee while jumping to the ground from the landing gear of a DC-9 which was approximately four feet off the ground.
3. Plaintiff initially received treatment from Dr. Dilworth, an orthopaedic surgeon in Greensboro. Dr. Dilworth diagnosed a torn medial meniscus and performed a partial medial meniscectomy by arthroscopic procedure on 6 April 1993. In May of 1993 Dr. Dilworth released plaintiff to return to full duty and rated plaintiff with a ten percent (10%) permanent partial disability of his leg.
4. Plaintiff returned to full duty but developed a worsening of symptoms in January 1994. The plaintiff saw Dr. Robert Collins, an orthopaedic surgeon in Greensboro on 11 May 1994 for an independent medical examination. Dr. Collins diagnosed plaintiff with a recurrent medial meniscus tear as well as post-traumatic arthritis. At plaintiff's request, Dr. Collins became his authorized treating physician.
5. Dr. Collins performed arthroscopic surgery on 14 June 1994; however, this surgery did not completely relieve plaintiff's pain. Dr. Collins released plaintiff to light duty by 25 July 1994, but defendant-employer could not accommodate plaintiff's physical restrictions.
6. Dr. Collins discharged plaintiff on 7 December 1994 with a twenty percent (20%) permanent partial disability rating. Plaintiff had undergone a 7 September 1994 functional capacity evaluation which limited plaintiff's activities generally to no continuous bending, stooping, climbing or lifting over thirty (30) pounds.
7. Plaintiff briefly returned to work with the restrictions from the functional capacity evaluation but was unable to continue due to knee pain. Due to the continued pain, Dr. Collins performed a total knee replacement on 9 February 1995. This replacement did not fully relieve plaintiff's pain.
8. Plaintiff's recovery from his total knee replacement was less favorable than expected. Ninety-seven percent (97%) of the people having total knee replacements will have complete relief of pain and improvement in the knee's function with one year and the remaining three percent (3%) will have such a recovery in three (3) years. Loosening of an implant, wear on the materials or infection are the ordinary causes for pain after a total knee replacement. Many means were utilized to try to determine the source of plaintiff's continued pain, including lab cultures, diagnostic studies, medications and second opinions; however, the origins of plaintiff's complaint could not be found. Plaintiff did not have any of the normal complications which typically cause pain.
9. The plaintiff underwent another arthroscopic surgery on 23 May 1996, but this surgery failed to provide lasting relief. Dr. Collins released plaintiff to light duty on 12 August 1996, but plaintiff had recently undergone an abdominal aortic aneurysm, and this prevented him from returning to work until October or November 1996.
10. Plaintiff sought a second opinion from Dr. Thomas Vail, an orthopaedic surgeon at Duke University Medical Center on 17 September 1997. Dr. Vail did not have any other recommendation for plaintiff's knee other than a revision of the knee replacement. This is also consistent with Dr. Collins' recommendations.
11. Prior to plaintiff's employment with defendant-employer in early 1991, plaintiff had worked as an airplane mechanic with Eastern Airlines for many years. Plaintiff intended to retire with Eastern Airlines at age 66 or 67, but Eastern Airlines went out of business. As a result of Eastern Airlines going out of business, plaintiff was left without retirement benefits, thus plaintiff began working with defendant-employer in 1991 with the intention of retiring in five to eight years.
12. The plaintiff has a college degree and previously worked in highly skilled, technical positions for the airlines although these positions entailed some heavy lifting and much bending and stooping.
13. The plaintiff is no longer physically capable of returning to his former capacity as an airline mechanic. The greater weight of the medical evidence is that the plaintiff is capable of some gainful employment and is a candidate for vocational/rehabilitative services. The plaintiff does not wish to participate in these efforts and desires to "retire" on permanent total disability without complying with the defendants' efforts to help him find work. Neither Dr. Collins or Dr. Vail support plaintiff's allegations of permanent and total disability.
14. There is insufficient medical evidence of record to find that plaintiff is permanently and totally disabled.
15. It was reasonable to conduct a hearing on this matter. In requesting the hearing the plaintiff relied on Dr. Vail's letter of 4 November 1997 in support of permanent and total disability when Dr. Vail indicated plaintiff was incapable of working. However, during deposition Dr. Vail clarified this letter in that he referred only to plaintiff's original job as an airline mechanic when saying plaintiff could not work. Dr. Vail did not mean to imply plaintiff could not work in any capacity.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. There is insufficient evidence of record at this time to determine whether plaintiff is permanently and totally disabled. Plaintiff is entitled to continuing temporary total disability at his compensation rate of $426.00 per week until further Order of the Commission. N.C. Gen. Stat. § 97-29.
2. Plaintiff is a candidate for suitable vocational rehabilitation efforts as approved by his treating physician. N.C. Gen. Stat. § 97-25.
3. Defendant is not entitled to attorney's fees. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim for permanent and total disability must be, and the same is, DENIED.
2. Plaintiff is ordered to undergo reasonable vocational rehabilitation efforts directed by the defendants and approved by plaintiff's treating physician. Plaintiff's willful failure to comply with these efforts may result in a suspension of his temporary total disability benefits.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff is approved for plaintiff's counsel and shall be deducted from the sum due plaintiff and paid as follows: twenty-five percent (25%) of any lump sum due plaintiff as a result of this Award shall be deducted from that sum and paid directly to plaintiff's counsel; thereafter, plaintiff's counsel shall receive every fourth compensation check.
4. Both sides shall pay the costs.
This the ________ day of February 1999.
 S/ _____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _____________ J. HOWARD BUNN, JR. COMMISSIONER
S/ _____________ BERNADINE S. BALLANCE COMMISSIONER
LKM/jth